VOKES & SCHAEFFER *v.* BOLLIN-McKINNEY HOTEL CO.

COMPROMISE AND SETTLEMENT—ALLOWANCE OF ATTORNEYS' FEES CONCLUSIVE—RECEIVERS.

> Where, in proceedings by creditors for the appointment of a receiver, a compromise agreement was entered into by them whereby the court awarded a certain sum for attorneys' fees, which was divided among the attorneys for the parties, all parties thereto are concluded thereby, and the petition of one of the parties for the allowance of additional attorneys' fees for services performed up to and including the date of the appointment of receiver was properly denied.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted January 19, 1927. (Docket No. 123.) Decided April 1, 1927.

Bill by Vokes & Schaeffer and another against the Bollin-McKinney Hotel Company and others for the foreclosure of a mortgage, the appointment of a receiver, and to redeem from the foreclosure of a prior mortgage. Albert Pick & Company intervened as a party defendant. From an order denying a petition for the allowance of attorney's fees, plaintiff Vokes & Schaeffer appeals. Affirmed.

*Moloney & Wing,* for plaintiffs.

*Max Kahn,* for defendant Albert Pick & Co.

SNOW, J. Plaintiff Vokes & Schaeffer appeals from

---

Compromise and Settlement, 12 C. J. §§ 35, 37.

*Continued from Vol. 237.

an order of Hon. Vincent M. Brennan, circuit judge, denying it the right to have paid to it an attorney fee out of funds in the hands of the receiver of the Carlton Plaza Hotel Company. This hotel property was heavily oppressed with debt, a first mortgage securing $600,000 of bonds, a second mortgage of $26,000 on the purchase price, and a third mortgage securing $200,000 of bonds. The revenue from its operation was scarcely sufficient to take care of payments to be made on the first mortgage. The second mortgage had been foreclosed, but the equity of redemption period had not expired. The third mortgage bonds were of little value.

Vokes & Schaeffer owned $8,000 of these third mortgage bonds, and, together with plaintiff William Wright Company, owner of $3,500 thereof, and acting independently of the trustee, filed a bill in chancery praying for a foreclosure of the mortgage, for a receiver, and for the right to redeem from the foreclosure of the purchase price mortgage.

Albert Pick & Company was, or soon after became, a large holder of the third mortgage bonds. It appeared as a defendant and consented to a receiver and to the authorization of receiver's certificates in the sum of $30,000 (which it afterwards purchased) to redeem the foreclosed mortgage.

Later, The American Bond & Mortgage Company, acting in behalf of the first mortgage bondholders, injected itself into the situation, and, by doing so, a conference between the interested parties was brought about which resulted in a complete settlement of the case and the entrance of a consent decree. Among other things it was agreed that the court was to award an attorney fee of $3,000, which ostensibly was for the attorney for the receiver, but which in fact was to be divided equally among such attorneys, Mr. Wing representing Vokes & Schaeffer, and Mr. Kahn repre-

senting Albert Pick & Company.    It is unnecessary to refer to the decree in other respects than to say that the attorney fee was provided (and paid) and the receivership continued.

About a month after the decree Vokes & Schaeffer petitioned the court for an additional attorney fee of $2,000

"in full compensation for services rendered up to and including the date of the appointment of the receiver in this cause, and for the services rendered by said attorneys in providing the ways and means of redeeming from said second mortgage in the amount of to wit, $26,000."

The motion was based on an affidavit of Mr. Wing, its attorney.

In support of this motion it was urged before the trial court, and is still insisted upon here, that the commencement by it of the suit in the first instance had resulted in the creation of what it terms a "common fund" now in the hands of the receiver, and that all parties were interested in, and were receiving or had received benefits from it, and that consequently they should equally bear the expense of the litigation.

It is not claimed that at the time the attorneys for all the parties met and arranged the terms of a consent decree, specifically setting the attorneys' fees at $3,000 to be divided three ways among them, that anything was said about an additional fee for Mr. Wing, counsel for Vokes & Schaeffer.    If counsel thought he was entitled to more or had it in mind to ask it later, he at least kept his thoughts to himself, and there is even claim that when he did make his intentions known he asked that it be kept secret for the time being.

We are not impressed with the suggestion of plaintiff that it instituted the action in the first instance for the common good; nor that because a receiver

agreeable to all parties was appointed a common fund for the good of all was thereby created, thus imposing a common obligation to share proportionately the expenses. This plaintiff, owning $8,000 of the third mortgage bonds (which it later sold for ten cents on the dollar), acted independently of its trustee in instituting this suit. Its interests were comparatively inconsequential, and had not threats of foreclosure of the first mortgage, and activity on the part of Albert Pick & Company, largely interested in the third mortgage bonds, brought about the conference and the consent decree, little, if anything, would have been accomplished. And in so far as attorneys' fees are concerned it must have been realized the court would award an attorney fee only to the attorney for the receiver; hence the, to say the least, unusual agreement to have the $3,000 awarded as receiver's attorney fee, and then unknown to the court divide it between them. Albert Pick & Company in good faith has purchased many thousand dollars of these minority bonds, bought the receiver's certificates and redeemed the purchase price mortgage, provided for two past defaults under the first mortgage at a cost of more than $35,000, and now is practically alone interested in the third mortgage. There is as a matter of fact no common fund in the hands of the receiver in which Vokes & Schaeffer has any interest.

But aside from this, if we are to recognize the agreement between the attorneys as to fees, the subject was positively, conclusively, and finally disposed of. They were decreed accordingly and paid. The payment was in full. If the attorneys can demand additional fees it must be from their clients.

The trial court at the hearing appropriately remarked:

"Mr. Wing, without going into the various interesting questions which arise, to me the fatal defect in your petition here is the fact that this decree was

brought about by a compromise agreement, and a consent decree; and, knowing as I do the way these matters are handled, and the way attorneys usually try to protect their rights when consent decrees are signed, and the way all of those details are considered and passed upon at that time, I don't think it would be safe practice after a consent decree is signed, following long negotiations (particularly where the funds on hand are not sufficient to pay creditors and bondholders, and some one must take a loss) I don't think it is safe practice to permit attorneys later on to come in and ask for fees which were not suggested or mentioned."

Not only would the practice of allowing additional attorney's fees under such conditions be unsafe, as suggested by the court, but it would be unwarranted and illegal.

The order of the court denying plaintiff's petition is affirmed, with costs to defendants.

SHARPE, C. J., and STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.    BIRD, J., did not sit.